UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ASSOCIATION OF AMERICAN PHYSICIANS AND SURGEONS, INC., et al.,<br><br>          Plaintiffs,<br><br>          v.<br><br>UNITED STATES FOOD AND DRUG ADMINISTRATION, et al.,<br><br>          Defendants. | Civil Action 00–02898 (HHK) |

**MEMORANDUM OPINION AND ORDER**

This court previously ruled that a final rule promulgated by the United States Food and Drug Administration ("FDA" or "government"), which mandated pediatric testing and formulation, exceeded the FDA's statutory authority and was therefore invalid. *See Ass'n of Am. Phys. & Surgeons, Inc. v. FDA*, 226 F. Supp. 2d 204 (D.D.C. 2002). Presently before the court is plaintiffs' Motion for an Award of Attorneys' Fees and Expenses pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. Upon consideration of the motion, the opposition thereto, and the record of this case, the court concludes that the motion should be granted.

**I.  BACKGROUND**

This lawsuit arose from plaintiffs' challenge to the FDA's promulgation of "Regulations Requiring Manufacturers to Assess the Safety and Effectiveness of New Drugs and Biological Products in Pediatric Patients" ("Pediatric Rule"), 21 C.F.R. §§ 201, 312, 314, 601, 63 Fed. Reg.

66,632 (Dec. 2, 1998).[1] The Pediatric Rule mandated that drug manufacturers evaluate the safety and effectiveness of their products on pediatric patients, absent an applicable exception. *See* 21 C.F.R. § 314.55.[2] The Pediatric Rule was applicable to all drug manufacturers, including those who disclaimed pediatric use in a product's labeling, and even, in certain circumstances, those whose products were previously approved by the FDA. *Id.* § 201.23(a). Failure to comply with the Pediatric Rule entitled the FDA to declare the product to be "misbranded or an unapproved new drug or unlicensed biologic." *Id.* § 201.23(d).

In 1999, plaintiffs filed a citizen petition with the FDA, challenging the FDA's authority to issue the Pediatric Rule and asking the agency to revoke the rule. The FDA denied the petition in 2000. This suit, brought under the judicial review provisions of the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*, followed.

In their pleadings before this court, plaintiffs argued that the FDA had acted beyond its statutory authority in issuing the Pediatric Rule and that the Rule directly conflicted with certain provisions of both the Food and Drug Administration Modernization Act ("FDAMA"), Pub. L. No. 105-115, 111 Stat. 2296 (1997), and its successor, the Best Pharmaceuticals for Children Act

---

[1] A detailed statement of the facts of this case is contained in this court's Memorandum Opinion of October 17, 2002. *See Ass'n of Am. Phys. & Surgeons*, 226 F. Supp. 2d at 205-10.

[2] Under the Pediatric Rule, the FDA presumed that all drug manufacturers submitting new drug applications would conduct pediatric testing unless the manufacturers bypassed the requirements by obtaining (1) a waiver or (2) a deferral of the rule from the FDA. For example, a drug manufacturer could have qualified for a waiver if it was shown that the drug in question would not provide a meaningful therapeutic benefit for children and that the product would be unlikely to be used in a substantial number of pediatric patients. *See* 21 C.F.R. § 314.55(c)(2). Additionally, drug manufacturers could seek a deferral of the pediatric testing requirements until after the FDA approved the product for adult use. *See id.* § 314.55(b).

("BPCA"), Pub. L. No. 107-109, 115 Stat. 1408 (2002). Plaintiffs alleged that the FDAMA and the BPCA evidenced a clear congressional intent that pediatric testing be conducted voluntarily rather than by the Pediatric Rule's command and control approach. The government responded by asserting that the Federal Food Drug and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 *et seq.*, served as the basis for the FDA's authority to issue the Pediatric Rule.

After examining specific provisions of the FDCA as well as the Act's broader context, this court concluded that the Pediatric Rule did not have a sound statutory basis in the FDCA. *Ass'n of Am. Phys. & Surgeons*, 226 F. Supp. 2d at 212-19. Recognizing that the FDCA's meaning "'may be affected by other Acts, particularly where Congress has spoken subsequently and more specifically to the topic at hand,'" *id.* at 212 (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)), the court then looked to the FDAMA and the BPCA to determine whether Congress intended for the FDA to promulgate the Pediatric Rule and whether the Rule "'fit[] into the overall regulatory scheme created by Congress,'" *id.* at 219 (quoting *Brown & Williamson Tobacco Corp. v. FDA*, 153 F.3d 155, 163 (4th Cir. 1998)). After a careful analysis, the court determined that the Pediatric Rule and the BPCA were incompatible. *Id.* at 219-22. Accordingly, the court concluded that the Pediatric Rule was beyond the FDA's statutory authority and was therefore invalid. *Id.* at 222.

The government opted not to appeal the court's summary judgment decision. However, the American Academy of Pediatrics and the Elizabeth Glaser Pediatric AIDS Foundation (collectively "Intervenors") requested, and were granted, leave to intervene in order to appeal. Intervenors then filed a Notice of Appeal on December 19, 2002. On December 11, 2003, after briefing on both the merits and on plaintiffs' motion to dismiss the appeal based on Intervenors'

lack of standing, the court of appeals dismissed the appeal pursuant to a stipulation for voluntary dismissal signed by counsel for plaintiffs and Intervenors. The government was not a party to the appeal and did not participate in the briefings on the merits. However, the government did participate as amicus curiae, filing a brief in support of plaintiffs' motion to dismiss.

This motion for fees and expenses followed.

## II. ANALYSIS

**A. Legal Standard**

The EAJA allows a qualified party who prevails against the United States in a civil action to recover attorneys' fees and other expenses. Specifically, the EAJA, in relevant part, provides:

> [A] court shall award to a prevailing party other than the United States fees . . . incurred by that party in any civil action . . . including proceedings for judicial review of agency action, brought by or against the United States . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412 (d)(1)(A).

In addition to attorneys' fees, the EAJA permits a prevailing party to recover "a judgment for costs" under 28 U.S.C. § 1920, *id.* § 2412(a)(1), as well as "other expenses, in addition to any costs," *id.* § 2412(d)(1)(A). These other expenses include all "[i]tems routinely billed to a client." *Nat'l Ass'n of Mfrs. v. Dept. of Labor*, 962 F. Supp. 191, 199 (D.D.C. 1997), *aff'd*, 159 F.3d 597 (D.C. Cir. 1998). Thus, costs and other expenses recoverable under the EAJA include paralegal fees, computer research, and photocopying expenses. *Hirschey v. FERC*, 777 F.2d 1, 6 (D.C. Cir. 1985) (permitting recovery of paralegal fees and computer research expenses); *Chen v. Slattery*, 842 F. Supp. 597, 600 (D.D.C. 1994) (noting that plaintiffs'

reasonable copying costs "are recoverable as a traditional element of 'reasonable attorney's fees'" under the EAJA) (quoting 28 U.S.C. § 2412(d)(1)(C)(2)(A)).

Looking to the text of the EAJA, the Supreme Court has noted that eligibility for attorneys' fees, costs, and expenses under the EAJA requires the claimant to meet four conditions: (1) that the claimant be a "prevailing party"; (2) that the government's position was not "substantially justified"; (3) that no "special circumstances make an award unjust"; and, (4) that pursuant to 28 U.S.C. § 2412(d)(2)(B), plaintiffs satisfy all of the EAJA's threshold eligibility requirements. *Commissioner, INS v. Jean,* 496 U.S. 154, 158 (1990). The government does not dispute that three of these conditions have been met here: that plaintiffs are a prevailing party, that there are no special circumstances making the award unjust,[3] and that plaintiffs satisfy all threshold eligibility requirements. *See* Opp'n to Pls.' Mot. for an Award of Attorneys' Fees and Expenses ("Opp'n") at 1, 9-12. Accordingly, only an analysis of the "substantially justified" requirement is necessary to determine whether plaintiffs are entitled to attorneys' fees, costs, and other expenses.

The Supreme Court has held that the term "substantially justified" means "'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Jean*, 496 U.S. at 158 n.6; *Pierce v. Underwood*, 487 U.S. 552, 565-66 & n.2 (1988) ("[A] position can be justified even though it is not correct, and we believe it can be substantially (*i.e.*,

---

[3] The "special circumstances" language in the EAJA has been interpreted to direct courts "'to apply traditional equitable principles' in determining whether a prevailing party should receive a fee award under EAJA." *Air Transp. Ass'n of Canada v. FAA*, 156 F.3d 1329, 1333 (D.C. Cir. 1998) (quoting *Oguachuba v. INS*, 706 F.2d 93, 98 (2d Cir. 1983)). Application of such principles has historically involved a determination of whether the equitable doctrine of "unclean hands" would render an award of fees unjust. *Id.* (listing cases). There have been no allegations here that plaintiffs here have "unclean hands."

for the most part) justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact."). The government bears the burden of proving that its position was "substantially justified." *Halverson v. Slater*, 206 F.3d 1205, 1208 (D.C. Cir. 2000).

The government's "position" for purposes of the EAJA includes both the "position taken by the United States in the civil action," as well as "the action or failure to act by the agency upon which the civil action is based." 28 U.S.C. § 2412(d)(2)(D); *see also Jacobs v. Schiffer*, 204 F.3d 259, 263 (D.C. Cir. 2000) ("The government's 'position' includes both its pre-litigation and litigation positions."). Importantly, an award of fees is appropriate "where the government's prelitigation conduct was not substantially justified even though its litigating position may have been substantially justified and vice versa." *Marcus v. Shalala*, 17 F.3d 1033, 1036 (7th Cir. 1994); *see also Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 967 (D.C. Cir. 2004) ("The government, however, must demonstrate the reasonableness not only of its litigation position, but also of the *agency's* actions.") (emphasis in original).

The court is to determine whether the Government's position was substantially justified "on the basis of the record" made in the civil action for which fees and other expenses are sought. 28 U.S.C. § 2412(d)(1)(B). The court, however, must "do more than explain, repeat, characterize, and describe the merits . . . decision." *Taucher v. Brown-Hruska*, 396 F.3d 1168, 1174 (D.C. Cir. 2005) (quoting *Halverson*, 206 F.3d at 1209). Instead, it must analyze "*why* the government's position failed in court." *Id*. (emphasis in original); *see also United States v. Hallmark Constr. Co.*, 200 F.3d 1076, 1080 (7th Cir. 2000) ("[T]he district court must reexamine the legal and factual circumstances of the case from a different perspective than that used at any other stage of the proceeding.").

6

**B.  The Government's Position Was Not Substantially Justified**

The government asserts that its position was substantially justified on several grounds. First, it argues that Congress's failure to expressly reject or endorse the Pediatric Rule when it passed the BPCA, even though Congress was well aware of the rule's existence at the time, supports the conclusion that the government's position was substantially justified.  Opp'n at 10. Second, the government cites the existence of affirmative legislative history of the BPCA that purports to be in support of the Pediatric Rule.  *Id.*  Third, quoting this court's opinion, the FDA contends that the question of whether the FDCA's labeling provision authorized the Pediatric Rule being a "close one" indicates that the FDA's decision to issue the rule was substantially justified.  *Id.* at 11.  Lastly, the government states that its position was substantially justified given the complexities of the statutory scheme involved and the lack of "clear and controlling case law or plain statutory language that would render the government's analysis erroneous from the outset."  *Id.* at 11-12.

As noted above, the government bears the burden of proving that both its position at the agency level and its position during the course of this litigation were "substantially justified."  28 U.S.C. § 2412(d)(2)(D).  The court will first analyze whether the FDA's pre-litigation position—the decision to issue the Pediatric Rule in the first place—was substantially justified. When focusing on the justification of the FDA's position at the agency level, the government's first two argument are plainly irrelevant.  Both look to actions that occurred *after* the Pediatric Rule was promulgated, and Congress's reactions after the fact are of no moment when determining whether the FDA's initial decision to issue the rule was substantially justified.

The government's third argument—that it was a "close" question whether the labeling provisions of the FDCA authorized the Pediatric Rule—likewise does not withstand scrutiny. As a preliminary matter, the government errs by placing too much emphasis on the court's statement that the question was a "close one." As the government itself rightly notes in its opposition, "it is the nature of the case that primarily informs the substantial justification inquiry, not the court's characterization of the government's position in the merits opinion." Opp'n at 8; *cf. F.J. Vollmer Co. v. Magaw*, 102 F.3d 591, 595 (D.C. Cir. 1996) (noting that presence of the term "unreasonable," or one of its synonyms, in a court's merits decision does not necessarily suggest that the government will have a difficult time establishing that its position was substantially justified for purposes of the EAJA).

The court's comment that the issue was a close one was addressed to the singular question of whether the FDCA labeling provisions, in a vacuum, might be read to authorize the Pediatric Rule. Recognizing that the FDA's authority to promulgate regulations "'may be affected by other Acts,'" *Ass'n of Am. Phys. & Surgeons,* 226 F. Supp. 2d at 212 (quoting *Brown & Williamson*, 529 U.S. at 133), the court also analyzed whether other statutory provisions affected this "close" question, *id.* at 219-22. Ultimately, the court held that the FDAMA (as well as the later-enacted BPCA) demonstrated that Congress clearly intended to adopt an incentive scheme, rather than a command and control approach, for dealing with pediatric testing of drugs. Given that these "two schemes differ[ed] in almost every possible regard," *id.* at 221, the court held that the Pediatric Rule exceeded the FDA's statutory authority, *id.* at 222. The ultimate issue—whether the FDA had the authority to promulgate the Pediatric Rule—was not a close question. In light of the court's complete analysis, the government's third argument fails.

Finally, the government cites the lack of clear statutory language and controlling case law to support the reasonableness of its position. Opp'n at 12. This argument, like those above, must be rejected. The court's merits holding was that Congress had "directly spoken to the issue here and ha[d] precluded the FDA's jurisdiction to promulgate the Pediatric Rule." *Ass'n of Am. Phys. & Surgeons*, 226 F. Supp. 2d at 212. In light of this holding, the court cannot agree with the government that Congress failed to express its will regarding the appropriate approach to pediatric drug testing with sufficient clarity, thereby substantially justifying the FDA's position.

The government's reliance on the lack of controlling case law is likewise unconvincing. As the court of appeals noted in *Halverson*, the "absence of contrary case law does not necessarily lead to the . . . conclusion . . . that the Department's position was substantially justified." 206 F.2d at 1210. This is particularly so when a court is analyzing whether the agency's pre-litigation position, and not its litigation position, is substantially justified; the lack of case law involving a regulation that has not yet been promulgated is hardly surprising and certainly does nothing to establish that the government was substantially justified in passing that regulation.

Moreover, statements by the FDA's former commissioner help establish that those at the agency itself even doubted the FDA's statutory authority to promulgate the Pediatric Rule. In 1992, six years before the Pediatric Rule was issued, then-Commissioner David Kessler made the following statement regarding the problem of drug testing on pediatric populations:

> I need to acknowledge the limits of the FDA's authority. It is our job to review drug applications for the indications suggested by the manufacturer. *We do not have the authority to require manufacturers to seek approval for indications which they have not studied.* Thus, as a matter of law, if an application contains indications only for adults, we're stuck.

David Kessler, Speech of FDA Commissioner to the American Academy of Pediatrics (Oct. 14, 1992) (emphasis added).

In sum, the government has failed to meet its burden of establishing that its position at the agency level was substantially justified.[4] Accordingly, the court holds that plaintiffs qualify for an award of attorneys' fees, costs, and other expenses under the EAJA.

## C.  Appropriate Amount of Reimbursement

Having determined that plaintiffs are entitled to a fee award, the court must next address the appropriate amount of reimbursement. Plaintiffs seek $378,017.45 for attorneys' fees and expenses incurred through February 17, 2004 plus an additional amount of fees and expenses to be determined for the period from February 18, 2004 through the disposition of this motion. Of this total, $308,329.80 is attributable to attorneys' fees, $26,711.95 to legal support fees, and $42,975.70 to expenses, which includes computer research costs, printing costs, and filing fees.[5]

The government contends that this amount is excessive because it includes the fees and expenses generated (1) in opposing Intervenors' motion to intervene, and (2) in defending the court's judgment on an appeal pursued by those Intervenors, but not pursued by the government. The government argues that "equity and reason" require that it should not be responsible for fees

---

[4] Because the court finds that the government's pre-litigation position was not substantially justified, it need not analyze the government's position during this litigation. *Marcus*, 17 F.3d at 1036; *Role Models*, 353 F.3d at 967. Therefore, the court expresses no opinion on that issue.

[5] The EAJA generally imposes a $125 cap on the hourly rate at which a prevailing party may be compensated. 28 U.S.C. § 2412(d)(2)(A). Pursuant to Section 2412(d)(2)(A)(ii) of the EAJA, plaintiffs have requested an upward adjustment of this rate to reflect the increased cost of living. Because the government does not object to this adjustment, the court will accept plaintiffs' calculation of the appropriate hourly rate.

that plaintiffs incurred during portions of the case where the government was not a party. Opp'n at 16-18. Further, the government contends that allowing fees in such a situation would create an incentive for the government not to change positions or compromise in situations involving an intervenor. *Id.* at 17-18.

Plaintiffs respond by noting that the appeal was the "logical outgrowth" of the civil action, which itself was of the government's "own making" due to the FDA's unreasonable decision to promulgate the Pediatric Rule in the first place and then to deny plaintiffs' citizen suit. Pls.' Reply in Support of Motion for an Award of Attorneys' Fees and Expenses ("Reply") at 14. Plaintiffs also argue that the proper inquiry is not whether the government was involved in the appeal itself, but whether the plaintiffs' fees were "necessary" to achieve the sought-after results. *Id.* at 12-13. Because it was "indisputably necessary" for plaintiffs to defend this court's decision before the court of appeals, they assert that an award that includes those amounts incurred on appeal is "manifestly just." *Id.* at 13. Plaintiffs also contend that, contrary to the government's claim in its opposition, the purposes of the EAJA are advanced by holding the government responsible for the attorneys' fees generated by plaintiffs in the course of the appeals process. *Id.* at 17-18.

After considering the text of the statute, its purposes, and relevant case law, the court concludes that the government's arguments must be rejected. First, the text of the EAJA speaks of actions "*brought* by or against the United States." 28 U.S.C. § 2412(d)(1)(A) (emphasis added), not *litigated* by or against the United States. Plaintiffs certainly brought this action against the United States. Had Congress intended for the government to be exempted from

11

paying attorneys' fees and costs for portions of a civil action during which the government did not participate, even though the suit was brought against them, it could have, or at least should have, been more careful with its language.

Moreover, the text of the EAJA limits a district court's discretion to reduce a fee award to such situations where "the prevailing party during the course of the proceedings engaged in conduct which unduly and unreasonably protracted the final resolution of the matter in controversy." *Id.* § 2412(d)(1)(C); *see also id.* § 2412(d)(2)(D) (noting that "fees and expenses may not be awarded to a party for any portion of the litigation in which the party has unreasonably protracted the proceedings"). In light of this statutory language, the Supreme Court has held that "absent dilatory conduct by the prevailing party in 'any portion' of the litigation, which would justify denying fees for that portion, a fee award presumptively encompasses *all aspects* of the civil action," including the appeal. *Jean*, 496 U.S. at 162 (emphasis added). The government does not suggest, nor could it, that the appeal unreasonably protracted the proceedings; there is nothing unreasonable about defending a district court victory on appeal. As plaintiffs correctly note, not only was it reasonable for plaintiffs to defend the judgment on appeal, but it was necessary if they hoped to ultimately prevail in this matter. Absent such a contention of unreasonable delay, the Supreme Court instructs this court to presume that the fee award should reimburse plaintiffs for their involvement in all phases of this litigation.[6]

---

[6] The Supreme Court has also indicated that a district court should look to the factors discussed in *Hensley v. Eckerhart*, 461 U.S. 424, 433-37 (1993), when determining whether to exercise its discretion to reduce an EAJA fee award. *Jean*, 496 U.S. at 161. In *Hensley*, the Court noted three factors that might affect the proper amount of a fee award: (1) whether the hours worked on the matter were excessive, redundant, or otherwise unnecessary, 461 U.S. at 434; (2) whether the plaintiffs failed on some of their claims, *id.* at 434-35; and (3) whether the plaintiffs only achieved limited success, thereby making the amount of fees seem

The purposes of the EAJA are also furthered by granting plaintiffs' request for attorneys' fees and costs, even for the portion of the litigation during which the government was not a party. The EAJA has two primary purposes: (1) "'to improve citizen access to courts and administrative proceedings,'" *Jean*, 496 U.S. at 165 n.14 (quoting S. Rep. No. 96-253, p. 6 (1979)); and (2) to "curb[] excessive regulation and the unreasonable exercise of Government authority," *id.* at 165 (quoting H. Rep. No. 96-1418, p. 12 (1980)). Contrary to the government's assertions, holding the government responsible for fees and costs incurred by plaintiffs, even for portions of the litigation where the government did not take part, would better advance these goals than would a contrary holding. As the Supreme Court noted in *Jean*, "the Government's general interest in protecting the federal fisc is subordinate to the specific statutory goals" of the EAJA. *Id.* at 164.

The goal of increasing access to the courts is better served by reimbursing all reasonable costs associated with bringing such an action, including those costs incurred litigating against third parties. The EAJA insures that plaintiffs who challenge unreasonable governmental action will be reimbursed all their reasonable fees and expenses for so doing. Refusing to award attorneys' fees for portions of a civil action during which the government did not participate would undermine that aim. Furthermore, given the necessity of defending a judgment on appeal, it is difficult to see how Congress could have intended to "throw [plaintiffs] a lifeline that it knew was a foot short." *Sullivan v. Hudson*, 490 U.S. 877, 890 (1989).

---

excessive, *id.* at 436.
      The government does not claim that the hours spent by plaintiffs on any stage of this litigation were excessive or redundant. Nor does the government claim that the plaintiffs obtained limited or partial success in this matter. Accordingly, none of the *Hensley* factors weigh in favor of a reduced fee award in this matter.

13

Likewise, the second purpose of the EAJA—to encourage the government not to adopt unreasonable positions—is also furthered by reimbursing plaintiffs for the reasonable costs and fees associated with the motion to intervene and the appeal, despite the fact that the government did not participate in those aspects of the litigation. The greater the exposure to liability for attorneys' fees and costs, the greater the incentive for the government not to act unreasonably. Decreasing the amount of compensation that is owed to plaintiffs would only act to decrease that incentive.[7]

Precedent from this circuit also supports granting plaintiffs the entire fee award they request. In *Environmental Defense Fund v. EPA*, 672 F.2d 42, 55-56 (D.C. Cir. 1982), the court of appeals awarded attorneys' fees under the Toxic Substances Control Act to the plaintiff for work performed by it on issues raised solely by third-party intervenors. In rejecting the governments request to reduce the fee award for these costs, the court of appeals relied on the fact that "all of the positions advanced by the intervenors were in defense of the disputed [agency] regulations," that "there [was] no suggestion that [the plaintiff] did any duplicate work in responding to the arguments raised by the intervenors as opposed to those raised by [the agency]," and "most significantly, [that the agency] never opposed any of the positions asserted by the intervenors." *Id.* at 56. All of the factors that the D.C. Circuit looked to in *Environmental Defense Fund* when determining that it was appropriate to require the government to pay attorneys' fees for the plaintiffs' work litigating against third parties are likewise present

---

[7] The government argues that awarding fees would create a disincentive for the government to change positions in situations involving an intervenor. Opp'n at 18. The court agrees with plaintiffs, who note that any such incentive would be remote and would be outweighed by the greater incentive not to adopt unreasonable regulations in the first place. Reply at 17-18.

here; the Intervenors certainly attempted to defend the validity of the Pediatric Rule, the presence of the Intervenors did not prompt any duplicative work, and the FDA never opposed the merits of the Intervenors' position. In light of this precedent,[8] as well as the text and purpose of the EAJA and other case law, the court concludes that the plaintiffs are entitled to reimbursement for all the attorneys' fees, costs, and other expenses that plaintiffs accrued during the entire course of this litigation.[9]

---

[8] Although not cited by the government in its pleadings, this court acknowledges that two circuits have reached contrary conclusions. In *Avoyelles Sportsmen's League v. Marsh*, 786 F.2d 631, 636 (5th Cir. 1986), the Fifth Circuit refused to award fees, under the fee provisions of the Clean Water Act, that were associated with the plaintiff's opposition to an appeal in which the government did not participate. Similarly, in *Love v. Reilly*, 924 F.2d 1492, 1495-96 (9th Cir. 1991), the Ninth Circuit denied fees under the EAJA that were accrued in opposing a motion to stay an injunction made by a private intervenor-defendant, and not by the government. Both decisions concluded that "an award is not appropriate for a phase of the litigation in which the party seeking an award was opposed only by other, non–governmental parties." *Love*, 924 F.2d at 1496; *Avoyelles*, 786 F.2d at 638. Notably, both of these decisions have been criticized for being "overly formalistic." *Am. Lung. Ass'n v. EPA*, 144 F.R.D. 622 (E.D.N.Y. 1992). More importantly, neither are binding on this court.

[9] In their reply, plaintiffs request an additional amount of fees and expenses for the time period from February 18, 2005, the day after the reply was filed, through the disposition of this motion. Reply at 2, 19. As this Memorandum Order and Opinion resolves all outstanding issues in this litigation, there should be no such additional fees or expenses.

### III.  CONCLUSION

For the foregoing reasons, it is this 27th day of September, 2005, hereby

**ORDERED** that plaintiffs' motion for attorneys' fees and expenses [#75] is GRANTED; and it is further

**ORDERED** that defendant shall pay plaintiffs' attorneys' fees and expenses in the amount of $378,017.45.

Henry H. Kennedy Jr.
United States District Judge